MULLIN HOARD & BROWN, L.L.P.
Brad W. Odell, SBN: 24065839
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone:  806-765-7491
Telefax:    806-765-0553
Email: bodell@mhba.com
*Attorneys for Debtor, iDocket.com, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **iDOCKET.COM, LLC** | § | **Case No. 23-20220-RLJ-11** |
| | § | |
| **Debtor.** | § | |

**iDOCKET.COM, LLC'S DISCLOSURE STATEMENT TO ACCOMPANY
DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

iDOCKET.COM, LLC ("**iDocket**" or the "**Debtor**"), the Debtor-in-Possession in the above-referenced bankruptcy proceeding, files this its Disclosure Statement to accompany its Chapter 11 Plan for Reorganization (the "**Plan**"). The Disclosure Statement information is intended to solicit the acceptance of the Plan by persons who are entitled to vote on acceptance or rejection of the Plan.

**ARTICLE I
INTRODUCTORY STATEMENT AND DISCLOSURES**

iDocket filed for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division (the "**Bankruptcy Court**"), on October 9, 2023 (the "**Petition Date**"). Since that time, the Debtor has continued to operate as Debtor-in-Possession pursuant to the provisions of Sections 1107 and 1108 of the Bankruptcy Code.

Pursuant to the terms of the Bankruptcy Code, this Disclosure Statement has been approved by the Bankruptcy Court. Such approval is required by statute and will not constitute a judgment of the Bankruptcy Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

Contained in the packet of documents which has been sent to you by the Debtor is the Disclosure Statement, the Plan, the Ballot for Voting on the Plan (the "**Ballot**") and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof.  Please read all of these materials carefully.  Please note that in order for your vote to be counted, you must: 1) include your name and address, 2) fill in, date, and

sign the enclosed Ballot and 3) return it to the attorney for the Debtor by the date and time specified on the Ballot.

### A.      THE PLAN OF REORGANIZATION

Purpose of the Plan.  The Debtor has filed contemporaneous hereto its Chapter 11 Plan of Reorganization. The purpose of the Debtor's Plan is to provide a method for the restructuring of the Debtor's liabilities and the method proposed by the Debtor to repay the restructured liabilities. The Plan was developed by the Debtor and proposes, among other things, the means by which all Claims against the Debtor will be finally resolved and treated for distribution purposes, consistent with the provisions and priorities mandated by the Bankruptcy Code.  The Plan is essentially a new contract between the Debtor and its Creditors, proposed by the Debtor to its Creditors for approval.  Creditors approve or disapprove of the Plan by voting their Ballots on the Plan, if they are in a Class entitled to vote, and, if appropriate, by objecting to confirmation of the Plan.  However, the Plan can be confirmed by the Bankruptcy Court even if less than all Creditors or Classes accept the Plan and, in such an instance, the Plan will still be binding on those Creditors or Classes that reject the Plan. Approval and consummation of the Plan will enable the Bankruptcy Case to be finally concluded.

The Debtor believes that the Plan is more attractive than other alternatives, such as conversion to Chapter 7 liquidation or dismissal of this Bankruptcy Case.  The alternatives to the Plan are more fully discussed in this Disclosure Statement in Article IX of this Disclosure Statement. EACH CREDITOR IS URGED TO READ THE PLAN PRIOR TO VOTING.

### B.      THE DISCLOSURE STATEMENT

Why You Have Received This Disclosure Statement.  You have received this Disclosure Statement because the Debtors have proposed a Plan with the Bankruptcy Court to satisfy its debts and provide for a liquidation of their assets.  The Bankruptcy Court held a hearing and approved this Disclosure Statement on **[Date to be Entered upon Approval]**.  A copy of the Plan is enclosed with the materials that you have received.  This Disclosure Statement, as required by 11 U.S.C. § 1125, is being provided to all known Creditors and other parties-in-interest whose claims are impaired in connection with the solicitation and acceptance of the Plan proposed by the Debtor.

Purpose of this Disclosure Statement.  The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the Holders of Claims against the Debtor to make an informed judgment in exercising its right either to accept or reject the Plan.

Sources of Information.  The information contained in this Disclosure Statement has been submitted by the Debtor unless specifically stated to be from other sources.  Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments.  While the Debtor has made every effort to retain the meaning of such other instruments or the portions transposed, the Debtor urges that any reliance on the contents of such other instrument should depend on a thorough review of the instruments themselves.

<u>Only Authorized Disclosure</u>.  No representations concerning the Plan are authorized by the Debtor or the Bankruptcy Court other than as set forth in this Disclosure Statement.  Any representations or inducements made by any person to secure your vote which are other than herein contained should not be relied upon, and such representations or inducements should be reported to counsel for the Debtor, who shall deliver such information to the Bankruptcy Court.

<u>Voting on the Plan</u>.  **YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT.**  A Creditor or Equity Interest Holder, in order to vote on the Plan, must have filed a proof of claim or interest on or before the Bar Date, unless the Debtor did not schedule the claim as Disputed, Unliquidated or Contingent.  Any Creditor whose Claim is not scheduled as Disputed, Unliquidated or Contingent is, to the extent scheduled, deemed to have filed a Claim and, absent objection, such Claim is deemed Allowed.  A Creditor or Equity Interest Holder may vote to accept or reject the Plan by filling out and mailing to counsel for the Debtor the Ballot which has been provided in this package of information.

In order for the Plan to be accepted by a class of Creditors, more than one half in number and at least two-thirds in amount of such class of Claims must vote to accept the Plan.  Only those Claim Holders that actually vote are considered in the calculations.  In order for the Plan to be accepted by Equity Interest Holders, at least two-thirds in amount of interests must vote to accept the plan.  Again, only voting Equity Interest Holders are considered in the calculation.  You are, therefore, urged to fill in, date, sign and promptly mail and/or fax the enclosed Ballot which has been furnished to you to counsel for the Debtor as follows:

Brad W. Odell
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Facsimile: 806-765-0553
Email:  bodell@mhba.com

The Court has fixed **[Date to be Entered upon Approval]**, as the last date by which Ballots must be served on counsel for the Debtor.  Except to the extent allowed by the Bankruptcy Court, Ballots that are received after such time will not be counted.  Ballots of Holders of Impaired Claims received pursuant to this solicitation and which are signed but are not expressly voted for acceptance or rejection of the Plan will be counted as Ballots for accepting the Plan.  A Ballot accepting the Plan may not be revoked, except by order of the Bankruptcy Court.

Whether a Creditor votes on the Plan or not, each creditor will be bound by the terms and treatments set forth in the confirmed Plan that is accepted by the requisite majorities of creditors and is confirmed by the Court, or as confirmed by the Court pursuant to the provisions of 11 U.S.C. § 1129(b). Absent some affirmative act constituting a vote, a Creditor not voting on the Plan will not be included in the tally.  Allowance of a claim for voting purposes does not necessarily mean that all or a portion of the claim will be allowed for distribution purposes.

You are urged to fill in, date, sign and properly mail in duplicate the enclosed Ballot, which has been provided.  Be sure to properly complete and legibly identify the name of the creditor, the

class in which you believe the claim is treated in the Plan, the amount of the claim, and indicate whether you are voting accept or reject the Plan.  Representatives of the Debtor or creditors of the Debtor may solicit your vote.  The cost of any solicitation by the Debtor will be borne by the Debtors.  Likewise, the solicitation costs of competing plan proponents will be borne by the parties proposing the competing plan, if any.

## C.    IMPORTANT DISCLOSURES

THIS DISCLOSURE STATEMENT IN SUPPORT OF THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION SUMMARIZES CERTAIN PROVISIONS OF THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION (THE "PLAN"), INCLUDING PROVISIONS RELATING TO THE PLAN'S TREATMENT OF CLAIMS AGAINST THE DEBTOR.  THE DISCLOSURE STATEMENT ALSO SUMMARIZES CERTAIN FINANCIAL INFORMATION CONCERNING THE DEBTOR AND CLAIMS ASSERTED AGAINST THE DEBTOR IN THE BANKRUPTCY CASE.   WHILE THE DEBTOR BELIEVES THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION WITH RESPECT TO THE INFORMATION SUMMARIZED, CREDITORS SHOULD REVIEW THE ENTIRE PLAN AND EACH OF THE DOCUMENTS REFERENCED HEREIN, AND SHOULD SEEK THE ADVICE OF THEIR OWN COUNSEL BEFORE CASTING THEIR BALLOTS.

**ONLY THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT ARE AUTHORIZED BY THE DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER DATE IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. THE DEBTOR IS UNABLE TO GUARANTEE THAT THE INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT IS ENTIRELY WITHOUT ERROR, BUT ALL REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT ALL REPRESENTATIONS ARE AS ACCURATE AS POSSIBLE AS OF THE DATE OF ENTRY OF AN ORDER APPROVING THIS DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125.**

**THE SOURCE OF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE DEBTOR OR ITS AGENTS AND EMPLOYEES AND HAS NOT BEEN SUBJECT TO AN AUDIT UNLESS OTHERWISE SPECIFICALLY NOTED.  THE STATEMENTS MADE HEREIN LIKEWISE HAVE NOT BEEN VERIFIED BY DEBTOR'S COUNSEL, ALTHOUGH AN ATTEMPT HAS BEEN MADE TO BE CONSERVATIVE AND REALISTIC. NEITHER THE DEBTOR NOR ITS COUNSEL REPRESENT OR WARRANT THE ACCURACY OF DISCUSSIONS CONTAINED HEREIN REGARDING EVENTS.**

**AS STATED PREVIOUSLY, YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND HOW THOSE TRANSACTIONS WILL AFFECT YOUR CLAIM AGAINST, OR INTEREST IN, THE DEBTOR.**

**THE DEBTOR WILL SEEK CONFIRMATION UNDER THE CRAMDOWN PROVISION OF SECTION 1129(B) OF THE BANKRUPTCY CODE AND HEREBY GIVES NOTICE OF INTENT TO INVOKE THE CRAM DOWN PROVISIONS OF SECTION 1129(B).**

### <u>NOTICE OF HEARING ON CONFIRMATION</u>

**NOTICE IS HEREBY GIVEN THAT THE COURT HAS SCHEDULED A HEARING TO DETERMINE WHETHER OR NOT THE PLAN SHOULD BE CONFIRMED ON [ENTER DATE AND TIME UPON APPROVAL] IN THE UNITED STATES BANKRUPTCY COURTROOM, 205 SOUTHEAST 5TH AVENUE, AMARILLO, TEXAS 79101-1559. YOU HAVE A RIGHT TO ATTEND THE HEARING AND PRESENT TO THE COURT YOUR ARGUMENTS EITHER IN FAVOR OF OR IN OPPOSITION TO CONFIRMATION OF THE PLAN.**

**NOTICE OF THE FIXING OF A BAR DATE AND THE REQUIREMENTS FOR FILING AND ALLOWANCE OF CLAIMS:**

NOTICE IS HEREBY GIVEN that the Court set **February 12, 2024** as the last day upon which proofs of claim or interests can be filed with the Court for the case of iDocket.com, LLC.

**DISCLOSURE OF EFFECT OF COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT AND OF THE ACCURACY OF THE REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT:**

COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF ANY OF THE REPRESENTATIONS CONTAINED IN EITHER THE DISCLOSURE STATEMENT OR THE PLAN, NOR DOES COURT APPROVAL OF THE DISCLOSURE STATEMENT CONSTITUTE AN ENDORSEMENT OF THE PLAN ITSELF. APPROVAL OF THE DISCLOSURE STATEMENT BY THE COURT REPRESENTS A DETERMINATION THAT THE DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS REQUIRED BY 11 U.S.C. SECTION 1125 AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.

THE DEBTORS SEEK AN AFFIRMATIVE VOTE FROM EACH CLASS AND EACH HOLDER OF A CLAIM IN THIS BANKRUPTCY PROCEEDING. THE BALLOT WHICH YOU WILL RECEIVE PERMITS YOU TO ACCEPT OR REJECT THE PLAN.

EXCEPT WHERE SPECIFICALLY STATED OTHERWISE, ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR OR OBTAINED FROM ITS RECORDS AND FILES. THE PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE BEST INFORMATION AVAILABLE TO THE DEBTOR AT THE TIME THAT THE DISCLOSURE STATEMENT WAS PREPARED.

THE DEBTOR FAVORS ACCEPTANCE OF THIS PLAN AND BELIEVES THAT CONFIRMATION OF THIS PLAN WOULD REALIZE PAYMENT OF LARGER DIVIDENDS TO CREDITORS THAN COULD BE OBTAINED THROUGH A CHAPTER 7 LIQUIDATION. SUCH CONCLUSION IS BASED ON INFORMATION IN THE POSSESSION OF THE DEBTOR AT THE TIME THE DISCLOSURE STATEMENT AND PLAN WAS PREPARED.

WHILE THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED OR VERIFIED EXCEPT WHERE SPECIFICALLY STATED, AND THE RECORDS KEPT BY THE DEBTOR ARE NOT REPRESENTED TO BE WITHOUT ANY INACCURACY OR OMISSION, THE DEBTOR FIRMLY BELIEVES THAT EVERY EFFORT HAS BEEN MADE TO BE ACCURATE AND COMPLETE.

## ARTICLE II
## DEFINITIONS

In addition to terms defined elsewhere in this Disclosure Statement, the following terms, as used in this Disclosure Statement, shall have the following meanings, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires. Further, terms which are used in this Disclosure Statement which are defined in Article II of the Plan shall have the meaning ascribed to them in the Plan and shall have the same meaning in this Disclosure Statement. A copy of the Plan is included in the materials you received. If you did not, for whatever reason, receive a copy of the Plan, or your copy of the Plan is illegible, you may contact counsel for the Debtor, Brad W. Odell, at P.O. Box 2585, Lubbock, Texas 79408-2585, Facsimile (806) 765-0553, email at bodell@mhba.com, in writing and transmitted via facsimile, email or mail to request another copy of the Plan.

Voting Deadline:          **[Date to be Added upon Approval]** (CST).

## ARTICLE III
## DEBTOR'S BACKGROUND INFORMATION

## A.    HISTORY OF THE DEBTOR

iDocket is a Texas limited liability company that owns and operates a cloud-based software company located at 447 Hickory Street, Hereford, Texas 79045. iDocket was founded in 2000. In

2019, Ms. Balderrama acquired the assets of iDocket, including its intellectual property and the right to use its trademarks and tradenames, when she formed the current iDocket.com, LLC. The prior entity switched its name after the acquisition to Solutions of Amarillo, LLC. The Debtor provides software, including a cloud-based software product, and support services to multiple local governments throughout the state of Texas. The Debtor's software product provides the local, county, and district courts throughout the state of Texas a platform to maintain judicial information for cases filed with the court.

As part of the Debtor's business, the Debtor holds a Master Services Agreement ("**MSA**") with the Texas Office of Court Administration ("**OCA**"). The Debtor has been developing its cloud-based software to meet the requirements of the MSA with the OCA. The Debtor has utilized multiple different technology firms/vendors to assist in the development of code for the cloud-based software. Unfortunately, due to some of these vendors failing to provide services as promised, the project went over budget and was delayed. This likewise caused the Debtor to fall behind on payments to its various trade vendors which has caused various vendors to seek various methods of collection from commencing lawsuits to attempting to acquire collateral to support the repayment of their unpaid trade debt.

To finance its operations, the Debtor acquired a line of credit from Happy State Bank, a division of Centennial Bank ("**HSB**") up to the original principal amount of $160,000.00. In May 28, 2023, the Debtor and HSB agreed to term out the line of credit and convert the line of credit to an amortizing promissory note (the "**HSB Note**") with a new maturity date of May 28, 2026. HSB has secured the HSB Note with a lien against iDocket's accounts receivable.

In October of 2022, the Debtor needed additional working capital to develop its cloud-based software product. The Debtor acquired the additional working capital from Newtek Small Business Finance, LLC ("**Newtek**") through an SBA guaranteed loan (the "**Newtek Note**"). On October 25, 2022, the Debtor executed the Newtek Note in the original principal amount of $2,500,000.00. To secure the Newtek Note, Newtek acquired a securing interest in the Debtor's accounts, inventory, equipment, chattel paper, instruments, letter-of-credit rights, letters of credit, deposit accounts, investment property, payment intangibles, and general intangibles. Newtek perfected its security interest by filing a UCC-1 Financing Statement with the Texas Secretary of State's Office under Filing Number 22-0049522117.

Pre-petition the Debtor also incurred significant trade debt to multiple IT service providers with whom the Debtor contracted to help build and support the Debtor's cloud-based software product under the MSA. Two of the major IT service providers are IncluIT, LLC ("**IncluIT**") and Baxture LLC ("**Baxture**"). Both Baxture and IncluIT were owed significant amounts pre-petition. On April 28, 2023, the Debtor executed documents with IncluIT to attempt to secure the repayment of the amounts owed to IncluIT. In its attempt to perfect the lien granted by iDocket to IncluIT, IncluIT did not file its UCC-1 financing statement until July 12, 2023. The Debtor asserts, as described more fully herein, that the lien of IncluIT is subject to avoidance as a preferential transfer pursuant to § 547 of the Bankruptcy Code.

Baxture and iDocket have continued to work together during the Bankruptcy Case and are forging a partnership moving forward. As set forth in the Plan and as more fully disclosed herein, Baxture will be exchanging its pre-petition debt to a 40% equity position in iDocket. This exchange for debt-to-equity will better position iDocket to move forward, improve its capabilities, and restructure its balance sheet to enhance its profitability.

## B.      EVENTS LEADING TO BANKRUPTCY

One of the Debtor's most valuable assets is its intellectual property which it has developed as part of the MSA with the OCA. Because of its increasing debt to vendors, several vendors started making significant demands on iDocket to pay them back. As disclosed, IncluIT required iDocket to secure its outstanding invoices with a promissory note and security agreement. Additionally, vendors began to commence lawsuits against iDocket and seek judgments on the debts owed by iDocket to these vendors.

On account of these activities by its vendors and the increasing costs to defend against lawsuits, iDocket considered all of its options to assure the best chance to continue operations and repay its debts to the best of its abilities. Further, to protect and to utilize the Debtor's intellectual property to generate revenues to regain profitability, the Debtor determined it to be in the best interests of the Debtor to seek the protection of the Bankruptcy Code to provide it with a breathing space to analyze its business operations and to restructure its liabilities. On October 9, 2023, iDocket filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

## ARTICLE IV
## ASSETS AND LIABILITIES OF THE DEBTORS

## A.      OVERVIEW AND SUMMARY OF ASSETS AND LIABILITIES OF DEBTORS

### *iDocket.com, LLC*

| ASSETS (As of Petition Date) | | |
|---|---|---|
| Category | Description | Estimated Value |
| Vehicles, trucks, sport utility vehicles, etc. | 1 truck and 3 sport utility vehicles | $79,142 |
| Financial assets | Cash, security deposits with utilities, and security deposits on leases | $51,562.82 |
| Accounts Receivable | Accounts receivable (book value less doubtful or uncollectible amounts) | $566,997.79 |
| Business-Related Property | Office furniture, fixtures, internal hardware, and | $623,212.93 |

| | internal software | |
|---|---|---|
| Intellectual property assets | Domain names, licenses, customer lists, cloud-based software product, and good will | $2,388,224.59 |
| **TOTAL OF PERSONAL PROPERTY** | | **$3,709,140.13** |
| | | |
| **LIABILITIES (As of Petition Date)** | | |
| Category | Creditor and Type of Collateral | Amount of Indebtedness[1] |
| Secured Creditor | Happy State Bank secured by deposit accounts and accounts receivable | $144,454.74<br><br>Equity = Yes |
| Secured Creditor | Newtek Small Business Finance, LLC secured by accounts receivable, equipment, inventory, general intangibles, payment intangibles, and instruments | $2,383,788.86<br><br>Equity = Yes |
| Secured Creditor | IncluIT, LLC asserted to be secured by accounts receivable, equipment, inventory, general intangibles, payment intangibles, and instruments | $5,033,734.94<br><br>Equity = No |
| Priority Creditors | Internal Revenue Service<br>Multiple State Revenue Departments for sales or payroll taxes<br>Multiple State Agencies for unpaid unemployment taxes | $28,712.17 |
| General Unsecured Claims | | $2,794,542.91 |
| **TOTAL SCHEDULED LIABILITIES** | | **$10,385,233.62** |

## B.   CLAIMS ASSERTED AGAINST THE DEBTORS

---

1 The amounts set forth herein come from the Debtor's schedules filed at Docket No. 27 in the Bankruptcy Case. The deadline to file a proof of claim has not run by the time of the preparation and filing of this Disclosure Statement. Claims may come in after the Disclosure Statement is filed which might be higher or lower than the amount set forth herein.

The Claims filed against the Debtor exceed $300,000, not including additional scheduled Claims by the Debtor for which a Proof of Claim has not yet been Filed. The chart in Article VI of this Disclosure Statement specifies the estimated amount of claims in each category of claims. The Claims filed against the Debtor have not necessarily become Allowed Claims. The Debtor will analyze the filed Claims and may file objections to one or more such Claim. Pursuant to the Plan, the Debtor has one hundred eighty (180) days after the Effective Date to file any objections to Claims. The Claims Register is publicly available for viewing between the hours of 8:00 a.m. – 4:00 p.m. (CST) at the Bankruptcy Clerk's Office, United States Courthouse, 205 Southeast 5th Avenue, Room 133, Amarillo, Texas 79101 or electronically at pacer.txnb.uscourts.gov for a fee. The Claims Register may contain some Claims that have been paid, resolved in lower amounts, are duplicative, or are disputed by the Debtor. The Debtor reserves all rights to object to any and all Claims, liens and Equity Interests Filed or asserted against the Debtor or its property or property interests.

## C.    PENDING AND PREVIOUS LITIGATION

Prior to the Petition Date, Selehann, LLC and NerdRabbit, LLC, two vendors of iDocket, commenced a lawsuit in the 222nd Judicial District Court of Deaf Smith County, Texas to collect amounts owed to it for services, goods, or both provided to iDocket. iDocket contested the claims of Selehann, LLC and NerdRabbit, LLC prior to filing this Bankruptcy Case. Now that iDocket has filed this Bankruptcy Case, iDocket asserts the claims of Selehann, LLC and NerdRabbit, LLC will be handled through the Claims process under the Bankruptcy Code.

Aside from the above-described matter, the Debtor is unaware at this time of any other outstanding claims they may have against any Creditor, party-in-interest, or other third party.  In the event the Debtor becomes aware of any claims, causes of action, or rights against any third party, such claims, causes of action or rights are hereby preserved and shall vest with the Debtor for the benefit of the Allowed Claims of creditors.

Except as settled prior to or as a part of the Plan, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claims pursuant to Sections 544 and 548 of the Bankruptcy Code, all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code, all claims recoverable under Section 550 of the Bankruptcy Code, all claims against any third party on account of an indebtedness, or any other claim owed to or in favor of the Debtor, are hereby preserved and will vest with the Debtor for enforcement in accordance with the Plan subsequent to the Effective Date.

The Debtor, at this time, has not identified any claims or parties against whom the described claims exist, but the Debtor disclosed on their Statement of Financial Affairs transfers the Debtor made to creditors and other parties within ninety (90) days prior to the Petition Date. According to the Debtor's Statement of Financial Affairs, the following parties may be the subject of Avoidance Actions:

| Name of Potential Defendant | Cause of Action | Est. Value |
|---|---|---|
| IncluIT, LLC (including successors) | Preference – 11 U.S.C. § 547(b) | $5,033,734.94 (avoidance of |

| | | lien) |
|---|---|---|
| Amazon Web Services | Preference – 11 U.S.C. § 547(b) | $76,348.17 |
| Apex Systems | Preference – 11 U.S.C. § 547(b) | $36,319.50 |
| Apollo Technology Solutions, LLC | Preference – 11 U.S.C. § 547(b) | $10,172.43 |
| Bank of America | Preference – 11 U.S.C. § 547(b) | $100,159.47 |
| Baxture | Preference – 11 U.S.C. § 547(b) | $11,750.00 |
| Charles Schwab & Co., Inc. | Preference – 11 U.S.C. § 547(b) | $8,228.92 |
| Chase Credit Card | Preference – 11 U.S.C. § 547(b) | $13,830.00 |
| Cherry Bekaert, LLC | Preference – 11 U.S.C. § 547(b) | $7,198.5 |
| Cooper Consulting Company | Preference – 11 U.S.C. § 547(b) | $31,559.97 |
| Microsoft | Preference – 11 U.S.C. § 547(b) | $15,556.24 |
| Robertson Ryan | Preference – 11 U.S.C. § 547(b) | $12,990.00 |
| TD Ameritrade | Preference – 11 U.S.C. § 547(b) | $29,192.76 |
| Travelers Insurance | Preference – 11 U.S.C. § 547(b) | $19,514.00 |
| United Healthcare | Preference – 11 U.S.C. § 547(b) | $83,635.21 |

The Debtor will investigate potential claims that may exist and defenses the third parties may have against the claims, and bring any claims against any third parties after the Effective Date of the Plan.  The Debtor, without further order of the Bankruptcy Court, shall have the exclusive right to prosecute, settle, withdraw or release any such claim on behalf of the Bankruptcy Estate. All funds recovered from the litigation of any of these claims shall be distributed to the General Unsecured Creditors in addition to the payments proposed in the Plan.

## ARTICLE V
## SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE

### A.    FIRST DAY AND CASH COLLATERAL MATTERS

On October 11, 2023, shortly after the Debtor filed its voluntary petition for relief under

Chapter 11 of the Bankruptcy Code, the Debtor filed (1) *Debtor's Emergency Motion for Authority to Use Cash Collateral on an Interim Basis and to Set Final Hearing*; and (2) *Emergency Motion of Debtors-in-Possession for Order Granting Debtors-in-Possession Authority to Pay (A) Prepetition Employee Wages, Salaries, and Related Items and (B) Prepetition Contributions to and Benefits under Employee Benefit Plan* (collectively, the "First Day Motions"). On October 13, 2023, the Court held a hearing on the Debtors' First Day Motions. After conducting the hearing, the Court granted the Debtor's First Day Motions. To adequately protect HSB and Newteck (collectively, the "Secured Lenders") for the interim use of cash collateral, the Court granted the Secured Lenders replacement liens of like-kind and priority on iDocket's accounts receivable post-petition. Since the first hearing on the interim use of cash collateral, the Secured Lenders and the Debtor have entered into further agreed orders on the continued use of cash collateral with the Court entering a final order on use of cash collateral on December 8, 2023. As part of the final order on use of cash collateral, iDocket commenced making adequate protection payments to both HSB and Newtek.

Subsequent to the hearing on the Debtor's First Day Motions, the Debtor, through its counsel and its representatives, in the first 30 days of the Bankruptcy Case, met with representatives of the U.S. Trustee's Office and, within 45 days of the Bankruptcy Case, appeared at a meeting held telephonically by the office of the U.S. Trustee, pursuant to Section 341 of the Bankruptcy Code, of which notice was provided to Debtor's known creditors at the time.

## B.    RETENTION AND PAYMENTS TO PROFESSIONALS

Employment of Mullin Hoard & Brown, L.L.P. as counsel for the Debtors.

On October 20, 2023, the Debtor filed its *Motion to Employ Mullin Hoard & Brown, L.L.P. as Counsel for the Debtor*. As set forth in the motion to employ, Mullin Hoard & Brown, L.L.P. received a retainer in the amount of $65,000.00 from the Debtor prior to the filing of this Bankruptcy Case. On November 1, 2023, the Court entered an order approving the employment of Mullin Hoard & Brown, L.L.P. for the Debtor.

On November 10, 2023, the Debtor filed its *Motion for Distribution of Retainer of Mullin Hoard & Brown, L.L.P., as Counsel for the Debtor*. In this motion, the Debtor sought interim approval of fees and expenses in the amount of $18,338.11 with a draw down on the retainer. On November 28, 2023, the Court entered an order approving the fees and expenses of Mullin Hoard & Brown, L.L.P. and authorizing the law firm to apply the retainer in the amount of $18,338.11 against the balance of the fees and expenses owed.

## ARTICLE VI
## SUMMARY OF TREATMENT UNDER THE PLAN

## A.    CLASSES AND DISTRIBUTIONS

The Plan separates Claims against the Debtor, the Estate and its property into Unclassified Claims and Classified Claims.

Unclassified Claims are generally post-petition Claims that must be paid in full and which do not vote on the Plan, and may consist of the following: (i) Allowed Administrative Claims; and (ii) Allowed Professional Claims. Additionally, Unclassified Claims consist of priority tax claims held by a governmental agency.

Classified Claims and Interests are classified in the Plan under the provisions of Section 1122 of the Bankruptcy Code into the following classes and sub-classes:

<u>Classified Claims and Interests of iDocket.com, LLC.</u>

Class 1:          Ad Valorem Tax Claims of iDocket prior to 2018
         Subclass A:  Potter County
         Subclass B:  City of El Paso
Class 2:          Secured Tax Claim of Utah State Tax Commission (Impaired)
Class 3:          Secured Tax Claim of State of Wisconsin DWD (Impaired)
Class 4:          Secured Claim of Happy State Bank (Impaired)
Class 5:          Secured Claim of Newtek Small Business Finance (Impaired)
Class 6:          Secured Claim of IncluIT, LLC (Impaired)
Class 7:          Secured Claim of Amarillo Economic Dev. Corp. (Impaired)
Class 8:          Unsecured Claims of Local Governments (Unimpaired)
Class 9:          Unsecured Claim of Baxture, LLC (Impaired)
Class 10:        General Unsecured Claims (Impaired)
Class 11:        Equity Interests (Impaired)

The Chart below summarizes and demonstrates the classification and treatment of classified and unclassified Claims under the Plan. In preparing and submitting the chart, the Debtor emphasizes and make clear the following:

- The chart is an estimate only, based on reasonable assumptions, but as an estimate it is subject to change and uncertainty based on future events.

- The deadline for filing prepetition Claims has not yet expired, and the Debtor does know how many more Claims will be filed. Further there is a possibility, though not expected, that creditors may file late-filed Claims and seek their allowance. Depending on the foregoing, the estimates may change.

- <u>The Debtor reserves its right to object to any claim not Allowed in the Plan, and it informs all Creditors that it may prosecute multiple claim objections, including after the Effective Date, regardless of whether the affected creditor accepts the Plan (unless the Claim is Allowed in the Plan).</u>

| iDocket CLAIMS AND CLASSES | | | | |
|---|---|---|---|---|
| Category | Class | Impaired | Estimated Claims in Category | Estimated Recovery |
| Allowed Administrative Claims | Unclassified | No | $50,000.00 | 100% |
| Priority Tax Claims of Various State Taxing Authorities | Unclassified | No | $10,521.00 | 100% |
| Priority Tax Claim of IRS | Unclassified | No | $2,018.00 | 100% |
| Ad Valorem Tax Claim of Potter County | Class 1:A | No | $188.62 | 100% |
| Ad Valorem Tax Claim of City of El Paso | Class 1:B | No | $1,015.85 | 100% |
| Secured Tax Claim of Utah State Tax Commission | Class 2 | Yes | $0.00 | Treated as an unsecured claim |
| Secured Tax Claim of State of Wisconsin DWD | Class 3 | Yes | $0.00 | Treated as an unsecured claim |
| Secured Claim of Happy State Bank | Class 4 | Yes | $144,454.74 | 100% |
| Secured Claims of Newtek Small Business Finance, LLC | Class 5 | Yes | $2,383,788.86 | 100% |
| Secured Claim of IncluIT, LLC | Class 6 | Yes | $0.00 | Treated as an unsecured claim |
| Secured Claim of Amarillo Economic Development Corp. | Class 7 | Yes | $0.00 | Treated as an unsecured claim |
| Unsecured Claims of Local Governments | Class 8 | No | Unknown | 100% |
| Unsecured Claim of Baxture, LLC | Class 9 | Yes | $890,749.35 | 40% equity in Reorganized Debtor |
| General Unsecured Claims | Class 10 | Yes | Approximately $7.6 million | Approximately 3% |
| Equity Interests in iDocket | Class 11 | Yes | N/A | Reduced to 60% equity in Reorganized Debtor |

## B.    TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

Administrative Claims and Deadline.  Holders of Administrative Claims of the Debtor that were incurred, accrued or in existence prior to the Effective Date, other than (a) a Professional Claim, (b) Allowed Administrative Claim as of the Effective Date, (c) Administrative Claim that represents a liability incurred and paid in the ordinary course of the Debtor's business, and (d) Administrative Claim based on a fee or charge assessed against the Estate under Chapter 123, Title 28, United States Code, must be filed by no later than the Administrative Claim Bar Date: (i) File an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtor, the United States Trustee, and all other parties entitled to notice thereof. Failure to File and serve such application by the Administrative Claim Bar Date shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of an Administrative Claim under the Bankruptcy Code and/or the Bankruptcy Rules.

Treatment of Administrative Claims and Professional Claims.  In full and final satisfaction of Allowed Administrative Claims, each Allowed Administrative Claim shall, unless otherwise agreed, be paid in full in cash by the Debtor by the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Administrative Claim; *provided, however*, that Allowed Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without Order of the Bankruptcy Court, shall be paid in accordance with the agreements related thereto.  Each Allowed Professional Claim, after deducting any retainer, shall be paid by the Debtor the later of (i) five (5) Business Days after such Professional Claim is Allowed by a Final Order, or (ii) on such date as agreed by the Debtor and the applicable Professional.

Priority Tax Claims

A.  *Utah State Tax Commission*

The Utah State Tax Commission filed Proof of Claim No. 2 in the original amount of $3,367.48. The Utah State Tax Commission asserts it holds a secured claim; however, the Debtor does not have any property in the state of Utah to secure its claim. Therefore, the Debtor treats the Utah State Tax Commission's Claim as a priority tax claim. In full satisfaction, release and discharge of its priority tax claim, the Utah State Tax Commission shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the Utah State Tax Commission.

B.  *Arkansas Department of Finance and Administration*

The Arkansas Department of Finance and Administration filed Proof of Claim No. 5 in the original amount of $216.09. The Arkansas Department of Finance and Administration asserts it holds a priority tax claim int the amount of $155.56. In full satisfaction, release and discharge of its priority tax claim, the Arkansas Department of Finance and Administration shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the Arkansas Department of Finance and Administration.

### C.   State of Wisconsin DWD

The State of Wisconsin DWD filed Proof of Claim No. 8 in the original amount of $1,289.62. The State of Wisconsin DWD asserts it holds a secured claim; however, the Debtor does not have any property in the state of Wisconsin to secure its claim. Therefore, the Debtor treats the State of Wisconsin DWD's Claim as a priority tax claim. In full satisfaction, release and discharge of its priority tax claim, the State of Wisconsin DWD shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the State of Wisconsin DWD.

### D.   Georgia Department of Revenue

The Georgia Department of Revenue filed Proof of Claim No. 9 in the original amount of $2,129.91. The Georgia Department of Revenue asserts it holds a priority tax claim int the amount of $1,709.01. In full satisfaction, release and discharge of its priority tax claim, the Georgia Department of Revenue shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the Georgia Department of Revenue.

### E.   State of Minnesota, Department of Revenue

The State of Minnesota, Department of Revenue filed Proof of Claim No. 10 in the original amount of $3,423.84. The State of Minnesota, Department of Revenue asserts it holds a priority tax claim int the amount of $2,677.63. In full satisfaction, release and discharge of its priority tax claim, the State of Minnesota, Department of Revenue shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the State of Minnesota, Department of Revenue.

### F.   Massachusetts Department of Revenue

The Massachusetts Department of Revenue filed Proof of Claim No. 11 in the original amount of $545.91. The Massachusetts Department of Revenue asserts it holds a priority tax claim int the amount of $466.79. In full satisfaction, release and discharge of its priority tax claim, the Massachusetts Department of Revenue shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the Massachusetts Department of Revenue.

### G.   Tennessee Department of Labor & Workforce Development

The Debtor scheduled a priority tax claim for the Tennessee Department of Labor & Workforce Development in the amount of $854.89. The Tennessee Department of Labor & Workforce Development has not yet filed a proof of claim in the case. In full satisfaction, release and discharge of its priority tax claim, the Tennessee Department of Labor & Workforce Development shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or

costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the Tennessee Department of Labor & Workforce Development.

### H.    Internal Revenue Service

The Internal Revenue Service filed Proof of Claim No. 6 in the original amount of $9,540.62. The IRS asserts it holds a priority tax claim int the amount of $2,017.76. In full satisfaction, release and discharge of its priority tax claim, the IRS shall receive: (i) cash in the amount of its priority tax claim, without interest, attorney's fees, or costs, on the later of (a) fifteen (15) days after the Effective Date if by then Allowed, or (b) fifteen (15) days after the Claim becomes an Allowed Priority Tax Claim, or (ii) such other treatment as may be agreed upon in writing by the IRS.

## C.    TREATMENT OF CLASSIFIED CLAIMS UNDER THE PLAN

The following is a summary of the treatment of the various classified claims under the Plan. It is important to note that the Plan provides the specific terms of the treatment, and that the Plan is the operative document that must be consulted for an exact understanding and explanation of the Plan's effect on classified Claims.  Furthermore, although the alleged liens and security interest of classified Creditors are described below, that description is <u>not</u> to be considered an agreement that any lien or security interest is valid, enforceable, perfected, and not avoidable by the Debtor, and this Disclosure Statement is without prejudice to those issues.  The Debtor reserves the right to contest the validity, extent, priority, perfection and avoidance of any alleged lien or security interest except where (i) a previous order of the Bankruptcy Court has been entered relating to the validity, enforceability, perfection and avoidance of a lien or security interest; or (ii) the Plan provides for the validity, extent, priority, perfection and non-avoidance thereof, including by allowing a fully secured claim or by releasing any potential lien or security interest holder.

### Class 1: Ad Valorem Tax Claims

Class 1 consists of two subclasses of Allowed Ad Valorem Tax Claims owed to Potter County and to the City of El Paso. Specifically, Class 1:A includes the Allowed Ad Valorem Tax Claim of Potter County alleged in Proof of Claim No. 1, and Class 1:B includes the Allowed Ad Valorem Tax Claim of  the City of El Paso alleged in Proof of Claim No. 3. Each holder of an Allowed Ad Valorem Tax Claim in Class 1 shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Ad Valorem Tax Claim, and the Lien(s) securing the same, cash in the full amount of their Allowed Claim, at the option of the Debtor, by the later of: (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Ad Valorem Tax Claim.

The Class 1 Ad Valorem Tax Claims are Unimpaired and shall be deemed to have accepted the Plan.

### Class 2: Secured Claim of the Utah State Tax Commission

Class 2 consists of the asserted Secured Claim of the Utah State Tax Commission. As set forth under Unclassified Claims, the Debtor disputes that the Utah State Tax Commission holds a secured claim against the Debtor because the Debtor does not own any property in Utah. Therefore, the Utah State Tax Commission does not hold a secured claim against the Debtor. Nonetheless, the

Utah State Tax Commission does hold an Allowed Priority Tax Claim against the Debtor which is treated under Unclassified Claims.

On account of the treatment afforded the Utah State Tax Commission as an Allowed Priority Tax Claim, the Class 2 Claims are Unimpaired and shall be deemed to have accepted the Plan.

### Class 3: Secured Claim of State of Wisconsin DWD

Class 3 consists of the asserted Secured Claim of the State of Wisconsin DWD. As set forth under Unclassified Claims, the Debtor disputes that the State of Wisconsin DWD holds a secured claim against the Debtor because the Debtor does not own any property in Wisconsin. Therefore, the State of Wisconsin DWD does not hold a secured claim against the Debtor. Nonetheless, the State of Wisconsin DWD does hold an Allowed Priority Tax Claim against the Debtor which is treated under Unclassified Claims.

On account of the treatment afforded the State of Wisconsin DWD as an Allowed Priority Tax Claim, the Class 3 Claims are Unimpaired and shall be deemed to have accepted the Plan.

### Class 4: Secured Claim of Happy State Bank

Class 4 consists of the Allowed Secured Claim of Happy State Bank, a division of Centennial Bank. The Allowed Secured Claim of HSB shall be paid in full satisfaction, release and discharge of its claim with monthly payments of $5,194.61 starting on the 5th day of the first full month after the Effective Date of the Plan for no more than thirty-six (36) months. Interest on HSB's Allowed Secured Claim shall remain at fixed 10.25% per annum. Payments of adequate protection made by the Debtor during the Bankruptcy Case shall be applied against the indebtedness owed. Until the HSB Allowed Secured Claim is paid in full, HSB shall retain its lien against iDocket's accounts receivable.

The Class 4 Claim is Impaired and shall be entitled to vote to accept or reject the Plan.

### Class 5: Secured Claim of Newtek Small Business Finance, LLC

Class 5 consists of the Allowed Secured Claim of Newtek Small Business Finance, LLC. The Allowed Secured Claim of Newtek shall be paid in full satisfaction, release and discharge of its claim with monthly payments of approximately $33,267.29 starting on the 20th day of the first full month after the Effective Date of the Plan. The Allowed Secured Claim of Newtek shall be amortized over 10 years from the Effective Date. Interest on Newtek's Allowed Secured Claim shall be set at a fixed 11.5% per annum. Until the Newtek Allowed Secured Claim is paid in full, Newtek shall retain its liens against the assets of iDocket which it held pre-petition.

Newtek shall likewise retain all guaranties and third-party pledges which were in place at the Petition Date. As more fully set forth herein, Amelia Balderrama will be selling a home she owns which is pledged to secure the Newtek Allowed Secured Claim. Upon sale of the home, the sales proceeds over and above the first lien holder will be used to paydown the Allowed Secured Claim of Newtek.

The Class 4 Claim is Impaired and shall be entitled to vote to accept or reject the Plan.

### Class 6: Secured Claim of IncluIT, LLC

Class 6 consists of the Secured Claim of IncluIT, LLC. IncluIT asserts a secured claim against the Debtor on account of loan documents executed by the Debtor in April of 2023. IncluIT did not file its UCC-1 Financing Statement to perfect its security interest in the assets of the Debtor until July 12, 2023. The Debtor asserts the filing of its UCC-1 Financing Statement on July 12, 2023 constitutes a transfer of property of the Debtor which occurred within 90 days of the Petition Date. Therefore, the Debtor asserts that any attempt of IncluIT, LLC to perfect its security interest in the assets of the Debtor is avoidable as a preference. The Debtor will be commencing an adversary proceeding to seek the avoidance of IncluIT's purported lien against the assets of the Debtor. Therefore, IncluIT for purposes of the Plan does not hold a secured claim against the Debtor.

IncluIT's claim against the Debtor shall be treated as a general unsecured claim and receive payment as provided to the General Unsecured Creditors in Class 10.

On account of the treatment afforded the Class 6 claim of IncluIT, IncluIT shall be entitled to vote to accept or reject the Plan as part of the Class 10 General Unsecured Creditors.

### Class 7: Secured Claim of Amarillo Economic Development Corp.

Class 7 consists of the Secured Claim of Amarillo Economic Development Corporation ("**AEDC**"). AEDC asserts a secured claim against the Debtor on account of loan documents executed by the Debtor in July of 2023. AEDC did not file a UCC-1 Financing Statement to perfect its security interest in the assets of the Debtor. Therefore, the Debtor asserts that AEDC for purposes of the Plan does not hold a secured claim against the Debtor.

AEDC's claim against the Debtor shall be treated as a general unsecured claim and receive payment as provided to the General Unsecured Creditors in Class 10.

On account of the treatment afforded the Class 7 claim of AEDC, AEDC shall be entitled to vote to accept or reject the Plan as part of the Class 10 General Unsecured Creditors.

### Class 8: Unsecured Claims of Local Governments

Class 8 consists of the unsecured claims of local governments arising out of the Professional Services Agreement between iDocket and the local governments. As part of these agreements, the local governments have a license to utilize iDocket software for the maintenance and public access of government records. As part of these agreements, iDocket shares revenues with the local governments on account of third-party access agreements with the public and private users. On the Petition Date, iDocket had outstanding revenue sharing obligations with local governments. iDocket intends to assume all of its Professional Services Agreements with local governments and to cure the outstanding balances owed to the local governments on their contracts.

To the extent necessary, iDocket will cure all of the past due revenue sharing claims of local governments on the 15th day of the first month after the Effective Date of the Plan.

The Class 8 Claims are Unimpaired under the Plan and shall be deemed to have accepted the

Plan.

### Class 9: Unsecured Claim of Baxture, LLC

Class 9 consists of the Allowed Unsecured Claim of Baxture, LLC. The Debtor scheduled a pre-petition claim for Baxture in the amount of $890,749.35. The Claim arises from prepetition IT services provided by Baxture to iDocket. Baxture has been a strategic partner to iDocket throughout the development of the Debtor's cloud-based software package. On the Effective Date iDocket shall issue in full and final satisfaction, discharge, and release of the Allowed Unsecured Claim of Baxture, LLC membership units in the Reorganized Debtor such that Baxture will hold forty percent 40% of the membership units in the Reorganized Debtor.

The Class 9 Claim is Impaired and shall be entitled to vote to accept or reject the Plan.

### Class 10: General Unsecured Claims of iDocket.com, LLC

Class 10 consists of all other Allowed General Unsecured Claims against iDocket not placed in any other Class under the Plan, including the Secured Claims of IncluIT and AEDC which the Plan deems to be unsecured. Each holder of an Allowed General Unsecured Claim shall receive, on account of its Allowed General Unsecured Claim, its Pro Rata share of monthly payments in the amount of $4,000.00 for five years. The first payment will be made on the 20th day of the first full month following the Effective Date of the Plan and shall continue for 60 months thereafter. To the extent the Debtor determines that the monthly payment to any particular creditor would be administratively cumbersome to pay on a monthly basis, the Debtor can pay such creditor on a quarterly basis by holding back sufficient funds from each month to pay the creditor the amount it would have received each quarter.

The Class 10 General Unsecured Claims are Impaired under the Plan and shall be entitled to vote to accept or reject the Plan.

### Class 11: Current Equity Interests of iDocket

Class 11 consists of the current holder (Amelia Balderrama) of Equity Interests in iDocket. On the Effective Date, the Reorganized Debtor shall issue new membership units to Baxture in full and final satisfaction, discharge, and release of its Allowed Unsecured Claim so that Baxture acquires a forty percent (40%) ownership interest in the Reorganized Debtor. As more fully set forth herein, Ms. Balderrama will retain a sixty percent (60%) ownership interest in the Reorganized Debtor in exchange for her contribution of the sales proceeds from the sale of her home in California to pay down the debt owed by iDocket to Newtek.

The Class 11 Claims are Impaired under the Plan and shall be entitled to vote to accept or reject the Plan.

### D.     MEANS FOR IMPLEMENTING THE PLAN

Attached hereto as **Exhibit A** is a sources and uses analysis of the funds that the Debtor anticipate having at Confirmation, along with projected payments to be made to holders of Allowed Claims under the provisions of the Plan.

Debtor's Disclosure Statement
Page 20

iDocket, as the Reorganized Debtor, shall continue to operate its cloud-based software product and to general revenues from its ongoing operations. Through iDocket's continued business operations, the Reorganized Debtor will make the payments called for under the Plan. Additionally, the Debtor will explore any opportunities it may have to sell off assets and streamline its operations. After confirmation of the Plan, the Debtor is authorized to sell any of its assets according to its business judgment without further motion and order of the Court. The sale of its assets and payment of any liens against the assets sold will be treated in accordance with this Plan, state law, or mutual agreement between the Debtor and lien holder.

Authorization and Issuance of New Membership Units.

On the Effective Date, the Reorganized Debtor is authorized to issue or cause to be issued and shall issue new membership units in the Reorganized Debtor to Baxture in full and final satisfaction, discharge, and release of its Allowed Unsecured Claim. The issuance will result in Baxture owning forty percent (40%) of the membership units in iDocket. All new membership units shall be duly authorized, validly issued, and, if applicable, fully paid and non-assessable.

In addition to exchanging its debt for equity in the Reorganized Debtor, Baxture is additionally agreeing that all future services of Baxture to iDocket will be reduced to 35% of the amount of the services provided.

On the Effective Date, all membership units held by Amelia Balderrama shall be ratified by the Reorganized Debtor and retained by Ms. Balderrama for her agreement to sell her home in California and to use all sales proceeds over and above the first lien mortgage to reduce the debt owed by iDocket to Newtek. Ms. Balderrama estimates that the contribution of new value to the Debtor shall be approximately $400,000.

Amended and Restated Company Agreement.

On the Effective Date, the Reorganized Debtor and all holders of membership units in the Reorganized Debtor shall be deemed parties to the Amended and Restated Company Agreement, which shall be on terms consistent with the Amended and Restated Company Agreement attached hereto as **Exhibit B**.

Preservation of Causes of Action and Rights.

All Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor or the Estate are preserved unless expressly released, waived, or relinquished under the Plan or the Confirmation Order, and shall vest in the Reorganized Debtor. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that a Cause of Action will not be pursued against them.

**Further, unless expressly released by the Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills,**

**damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.**

Unless expressly released by the Plan or by an Order of the Bankruptcy Court, the Debtor may hold the following claims, all of which shall be preserved pursuant to the terms of this Plan.

- Preference claims under section 547 of the Bankruptcy Code, including all preference claims described herein;

- Fraudulent transfer and other avoidance claims arising under section 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;

- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;

- Claims and Causes of Action asserted in current litigation, whether commenced pre- or post-petition; and

- Counterclaims asserted in current litigation.

<u>Debtor as Representative of the Estate</u>.

The Reorganized Debtor shall be appointed representative of the Estate pursuant to § 1123(b)(3)(B) of the Bankruptcy Code with respect to the causes of action retained in Article V, Paragraph 5.4 of the Plan. The Reorganized Debtor may enforce, sue on, and, subject to Bankruptcy Court approval (except as otherwise provided herein), settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action retained pursuant to the Plan. Except as otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall be vested with authority and standing to prosecute the Causes of Action retained pursuant to the Plan. The Reorganized Debtor and its attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such Causes of Action.

Recovery by the Reorganized Debtor in any Avoidance Actions shall be for the benefit of the Debtor's Estate and to make payment on Claims in accordance with the Plan and the Bankruptcy Code.

## G.   ASSUMPTION OF EXECUTORY CONTRACTS

Assumed Executory Contracts and Unexpired Leases

To the extent not previously granted by the Court, the Debtor assumes the following executory contracts and unexpired leases:

- Master Services Agreement with the Texas Office of Court Administration
- All Professional Services Agreements with local governments
- Lease on Volkswagen Atlas

General Rejection of Executory Contracts

All other executory contracts and unexpired leases not referenced above of the Debtors (including, but not limited to, those listed on the Debtors' Schedules) which are not expressly assumed or rejected on or before the Effective Date, or not otherwise specifically treated in this Plan or in the Confirmation Order, shall be deemed to have been rejected as of the Petition Date. The Bankruptcy Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to Section 365 of the Bankruptcy Code. The listing by the Debtor in its Schedules of a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor that such contract or lease is an executory contract or unexpired lease of the Debtor, or that the Debtor or its Estate have any liability thereunder.

Claims for Damages

Any Claim based upon rejection of an executory contract or unexpired lease under the Plan must be Filed with the Bankruptcy Court and served on the Debtor, the U.S. Trustee, and all parties requesting notice via the Bankruptcy Court's ECF system such that the Claim is actually received within thirty (30) days of the entry of an Order rejecting such contract or lease. All Allowed Claims for rejection damages, unless otherwise specifically provided for or addressed in this Plan, shall be treated as a Class 10 General Unsecured Claims. Any Claim not Filed within such time will be forever barred from assertion against the Debtor or its Estate.

## H.   RESOLUTION OF DISPUTED CLAIMS

Standing

Following the Effective Date, the Debtor shall have standing to object to Claims.

Effect of Bar Date

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules as, or holds a, Contingent Claim, Unliquidated Claim, or Disputed Claim,

and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Amendments to Claims; Claims Filed After the Effective Date.

Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Effective Date without the prior written authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any amended Claim Filed with the Bankruptcy Court after the Effective Date shall be deemed Disallowed in full and expunged without the need for any action by the Reorganized Debtor. Notwithstanding the foregoing, and for the avoidance of doubt, the holder of an Ad Valorem Tax Claim may amend any timely Filed proof of Claim, where such proof of Claim includes an estimated amount for *ad valorem* taxes, in order to assert actual taxes for said year(s), at any time prior to substantial consummation of the Plan.

### Objection Deadline

Within one hundred eighty (180) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains. Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date. Nothing in this Plan extends the Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has.

### Creditor Response to Objection

With respect to any objection to a Claim when such objection is Filed after the Effective Date, the Creditor whose Claim was the subject of the objection must File with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and its counsel no later than thirty (30) days from the date of service of any such objection. Failure to File and serve such a response within the thirty (30) days shall be grounds for the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

### No Payment Pending Allowance

Notwithstanding any other provision in the Plan, if any portion of a Claim is Disputed or is an Undetermined Claim, then no payment or Distribution shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### Allowance of Claims

At the time, and to the extent that a Disputed or an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such Distributions. Such Distributions shall be made in the manner provided for by the Plan or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## I.    RETENTION OF JURISDICTION

Under the Plan, notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date of the Plan, the Bankruptcy Court shall retain jurisdiction, to fullest extent legally permitted, over the Bankruptcy Case, all proceedings arising under, arising in or related to the Bankruptcy Case, the Confirmation Order, the Plan and administration thereof. Some specific types of disputes and proceedings that the Bankruptcy Court shall retain jurisdiction over are identified in Article XIV of the Plan.

## ARTICLE VII
## VOTING PROCEDURES AND REQUIREMENTS

### A.    VOTING DEADLINE

Each Creditor holding a Claim which entitles the Creditor to vote on the Plan has been provided a Ballot along with this Disclosure Statement. The Ballot is to be used by the Creditor to accept or reject the Plan and to make any elections that are available to the Creditor as indicated by the Ballot.

To ensure that a Ballot is deemed timely and considered by the Balloting Agent, which shall be the Debtor's attorneys, Mullin Hoard & Brown, L.L.P., a Creditor must: (a) carefully review the Ballot and the instructions set forth thereon; (b) provide all of the information requested on the Ballot; (c) sign the Ballot; and (d) return the completed and signed Ballot to the Balloting Agent by the Voting Deadline. By order of the Bankruptcy Court, the "Voting Deadline" is 5:00 p.m. (CST), on **[Date to be Entered upon Approval]**. Therefore, in order for a Ballot to be counted for voting purposes and any applicable election, the completed and signed Ballot must be received at the address specified below by no later than the Voting Deadline.

DEADLINE:    Must be **RECEIVED** by 5:00 p.m., Central Standard Time
On **[Date to be Entered upon Approval]**

Addressed to:
Mullin Hoard & Brown, L.L.P.
Attn: Brad W. Odell
P.O. Box 2585
Lubbock, Texas 79408-2585
Facsimile: (806) 765-0553
Email:  bodell@mhba.com

### B.    CREDITORS SOLICITED TO VOTE

Each Creditor holding a Claim in a Class that is Impaired under the Plan is being solicited to vote on the Plan. As to any Claim for which a Proof of Claim was Filed and as to which an objection has been lodged, however, if such objection is still pending as of the Voting Deadline, the Creditor's vote associated with such Claim will not be counted to the extent of the objection to the Claim, unless and to the extent the Bankruptcy Court temporarily allows the Claim upon motion by such Creditor in an amount determined by the Bankruptcy Court. Such motion must be heard and determined by the Bankruptcy Court prior to the Confirmation Hearing. Further, the Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection of the Plan was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.   DEFINITION OF IMPAIRMENT

Pursuant to Section 1124 of the Bankruptcy Code, a Class of Claims is impaired under a Plan unless, with respect to each Claim of such Class, the plan does at least one of the following two (2) things:

1.    leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim; or

2.    notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:

   (a)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code;

   (b)    reinstates the maturity of such claim as it existed before the default;

   (c)    compensates the holder of such Claim for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

   (d)    does not otherwise alter the legal, equitable, or contractual rights to which such claim entitles the holder of such Claim.

The Plan identifies the classes of Creditors and Interests that the Debtor believes are Impaired or Unimpaired under the Plan. The Plan cannot and does not change the law on what is an impaired class and, to the extent a Creditor disagrees with the Debtor's identification of impaired or unimpaired classes, the Creditor may object to the Plan and the Bankruptcy Court will decide the dispute.

## D.   CLASSES IMPAIRED UNDER THE PLAN

Classes 1 and 8 are Unimpaired. Accordingly, under section 1126(f) of the Bankruptcy Code, those Classes are conclusively deemed to have accepted the Plan and are not entitled to vote in respect of the Plan.

Classes 2 through 7 and 9 through 11 are Impaired. Therefore, the holders of Allowed Claims in those Classes are being solicited for votes in favor of the Plan.

### E.      VOTE REQUIRED FOR CLASS ACCEPTANCE

Pursuant to the Bankruptcy Code, a Class of Claims under the Plan shall be deemed to have accepted the Plan if the Plan is accepted by Creditors holding at least two-third (2/3) in amount and more than half (1/2) in number of the Claims within such Class who are entitled to vote and who actually vote using a properly completed and signed Ballot which is returned to the Balloting Agent by no later than the Voting Deadline.  It is important to note that, pursuant to the Bankruptcy Code, a Class vote in favor of the Plan will be binding even on those creditors in the Class who vote against the Plan, so long as the requisite voting percentages are obtained in favor of the Plan.

### ARTICLE VIII
### CONFIRMATION OF THE PLAN

### A.      BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, an attempt is made to restructure the Debtor's finances so that the Debtor may both continue to operate its business and repay its creditors.  Alternatively, the chapter 11 plan may provide for the liquidation of the Debtor's assets, with the properties subject to security interests going to the respective secured creditors and all remaining property satisfying, first, administrative claims and priority claims, and, secondly, general unsecured claims.  Formulation of a Plan of Reorganization is the primary purpose of a reorganization proceeding under Chapter 11.

The Plan sets forth and governs the treatment and rights to be afforded to creditors, other claimants, and equity interest holders with respect to their claims against, and interests in the Debtor's assets.  According to Section 1125 of the Bankruptcy Code, acceptances of a chapter 11 plan may be solicited only after a written Disclosure Statement approved by the Bankruptcy Court as containing adequate information has been provided to each creditor or equity interest holder.  This Disclosure Statement is presented to creditors and interest holders to satisfy the disclosure requirements contained in Section 1125 of the Bankruptcy Code.

### B.      CONFIRMATION HEARING

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to holder a hearing on confirmation of the Plan. Section 1128(b) provides that any party in interest may object to confirmation of the Plan. The Confirmation Hearing has been scheduled for: **[Date to be Entered upon Approval]** in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, 205 Southeast 5th Avenue, Amarillo, Texas 79101.

Any objection to confirmation of the Plan must be in writing and such objection must be Filed with the Bankruptcy Court and served on each of the following parties by no later than 5:00 p.m. (CST) on **[Date to be Entered upon Approval]**.

| | |
|---|---|
| <u>Debtor:</u> | <u>Counsel for the Debtors:</u> |
| iDocket.com, LLC | Mullin Hoard & Brown, L.L.P. |
| | Attn: Brad W. Odell |
| | P.O. Box 2585 |
| | Lubbock, Texas 79408-2585 |

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT SHALL NOT BE CONSIDERED BY THE BANKRPUTCY COURT AND SHALL BE DEEMED WAIVED.**

### C.    MODIFICATION OF THE PLAN

Section 1127(a) of the Bankruptcy Code permits the Debtor to amend or modify a plan at any time prior to confirmation.  Post-confirmation modifications of a plan are allowed under Section 1127(b), if the proposed modification is offered before a plan has been substantially consummated or pursuant to an article of the confirmed plan authorizing the intended modification. Debtor reserves the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event the Debtor proposes to modify the Plan prior to the Confirmation Order, further disclosures pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-confirmation modifications adversely change the treatment of any creditor or equity security interest holder who has previously accepted the Plan.  If the proposed pre-confirmation modification is material and adverse, or if a post-confirmation modification is sought, the Debtor intends to supplement this Disclosure Statement as necessary to describe the changes made in the Plan and the reasons for any proposed modifications.

In the event that any impaired class of claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."  A Plan of Reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity security interests.  "Fair and equitable" has different meanings for secured claims and unsecured claims.

With respect to a secured claim, "fair and equitable" means either:  i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal to the allowed amount of its claim with a present value on the effective date of the Plan at least equal to the value of such secured creditor's interest in the property securing its liens; or ii) property subject to the lien of the impaired secured creditors is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or iii) the impaired secured creditor realizes the "indubitable

equivalent" of its claim under the Plan.

With respect to an unsecured claim, "fair and equitable" means either i) each impaired unsecured creditor receives or retains property of a value equal to the amount of its allowed claim; or ii) the holders of the claims and equity security interests that are junior to the claims of the dissenting class will not receive any property under the Plan.

In the event one or more classes of impaired claims rejects the Plan, the Bankruptcy Court will determine at the hearing for confirmation of the Plan whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims. If the Bankruptcy Court determines that the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims, the Bankruptcy Court can confirm the plan over the objection of any impaired class.

## ARTICLE IX
## LIQUIDATION AND PLAN ALTERNATIVES

The alternative to a chapter 11 plan of reorganization would be a chapter 7 liquidation, whereby the assets of the bankruptcy estate would be liquidated and proceeds distributed to the Creditors. The Debtor believes the continued operations of the Debtor under the Plan will provide a greater distribution to creditors than conversion to a Chapter 7. The Debtor's operations are based on the Master Services Agreement ("**MSA**") with the Texas Office of Court Administration (the "**OCA**"). The Debtor does not believe that the MSA is assignable or that the OCA would approve the assignment of the MSA. The Debtor's most valuable asset is its intellectual property created pursuant to the MSA. If the Debtor were to convert its case to Chapter 7, the Chapter 7 Trustee would not be able to monetize the Debtor's most valuable asset. All remaining assets are minimal compared to the revenues that will be generated by the Debtor from the services it provides under the MSA and the Professional Services Agreements with the local governments. Further, Newtek holds a lien against all of the Debtor's assets. To the extent a Chapter 7 Trustee could monetize the Debtor's intellectual property, it would most likely only go to pay Newtek on its secured claim.

Additionally, a Chapter 7 Trustee is entitled to a commission for any distribution it makes to creditors under the Bankruptcy Code. The commission is treated as an administrative expense. The Debtor cannot project the commission a Chapter 7 Trustee might be entitled to because there are many variables including the amount the Trustee distributes under a chapter 7 case, the amount a chapter 7 trustee recovers from any claims or causes of action the Debtor might have against third parties, and any liens a chapter 7 trustee might avoid. Continuation of the Debtor's business operations under the Debtor's Plan will not create an administrative expense as the Debtor is not entitled to a commission for property distributed to creditors under the Plan.

Attached as **Exhibit C** is an analysis of the possible recoveries that Creditors could expect under a Chapter 7 liquidation of the Debtor. Based on the Debtor's liquidation analysis, the Debtor believes the Creditors will receive more under the Plan.

## ARTICLE X
## RISK FACTORS

### A.    ESTIMATED RECOVERY RISKS

The Debtor does not perceive there to be substantial risks associated with the continuation of its operations under the Plan and to be able to make the payments called for under the Plan. The Debtor holds an MSA with the OCA. Likewise, the Debtor holds Professional Services Agreements with local governments throughout the state of Texas. Debtor's revenues are based on these agreements, which the Debtor believes to be sound. Nonetheless, the Debtor recognizes that each governmental unit must have budgets including the expenses associated with the Professional Services Agreement each year. There is risk that a government may not be able to receive the acquired budgetary approvals causing for one or more government units to terminate its Professional Services Agreement with the Debtor.

### B.    BANKRUPTCY RISKS

Insufficient Acceptances.        For the Plan to be confirmed, each impaired Class of Claims is given the opportunity to vote to accept or reject the Plan.  With regard to such impaired voting Classes, the Plan will be deemed accepted by a Class of Impaired Claims if the Plan is accepted by claimants of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of the Class voted.  On those members of a Class who vote to accept or reject the Plan will be counted for voting purposes.  The Debtor intends to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular Class of Claims has not accepted the Plan.  However, there can be no assurance that any Impaired Class of Claims under the Plan will accept the Plan or that the Debtor would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

Confirmation Risks.    The following specific risks exist with respect to confirmation of the Plan:

- Any objection to confirmation of the Plan can either prevent confirmation of the Plan, or delay such confirmation for a significant period of time.
- Since the Debtors may be seeking to obtain approval of the Plan over the rejection of one or more impaired Classes of Claims, the cramdown process could delay confirmation.

## ARTICLE XI
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES
## OF THE PLAN AND SECURITIES LAW CONSIDERAIONS

The following discussion summarizes certain U.S. federal income tax consequences to the Debtor and certain holders of Allowed Claims of the implementation of the Plan. This summary is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to any particular Debtor or holder of an Allowed Claim. This discussion does not purport to be a complete analysis or listing of all potential tax

considerations.

The discussion is based upon the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("IRS"), all in effect on the date hereof. Legislative, judicial or administrative changes or new interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the U.S. federal income tax consequences of the Plan. Any such changes or new interpretations may have retroactive effect and could significantly affect the U.S. federal income tax consequences of the Plan described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt.  In addition, this discussion does not address foreign, state or local tax consequences of the Plan, nor does it purport to address the U.S. federal income tax consequences of the Plan (i) special classes of taxpayers (such as Persons who are related to the Debtor within the meaning of the Tax Code, non-U.S. persons, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, and investors in pass-through entities and holders of Claims or Equity Interests who are themselves in bankruptcy) or (ii) holders not entitled to vote on the Plan, including holders whose Claims or Equity Interests are to be extinguished without any Distribution. Holders of Allowed Claims should consult their own tax advisors as to the effect such ownership may have on the U.S. federal income tax consequences described below.

This discussion assumes that holders of Claims or Equity Interests hold only Claims or Equity Interests in a single Class.  Holders of multiple Classes of Claims or Equity Interests should consult their own tax advisors as to the effect such ownership may have on the U.S. federal income tax consequences described below. This discussion further assumes that the various debt and other arrangements to which the Debtor is a party will be respected for U.S. federal income tax purposes in accordance with their form.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY AS MANDATED BY SECTION 1125 OF THE BANKRUPTCY CODE AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

**TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (1) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT**

**(INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER OF A CLAIM FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS UNDER THE TAX CODE, (2) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE CONFIRMATION OF THE PLAN TO WHICH THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT ARE ANCILLARY, AND (3) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED UPON THEIR PARTICULAR CIRCUMSTANCES FROM THEIR OWN TAX ADVISOR.**

Tax Status of the Debtor. The Debtor is classified as a C-corporation for U.S. federal income tax purposes. Accordingly, all items of income, gain, loss, deduction, and credit of the Debtor, for U.S. federal income tax purposes (such as gains, losses, and cancellation of indebtedness income from effectuation of the Plan), will be assessed against the Debtor corporation and not against the members or Equity Interest Holders.

## A.      TAX CONSEQUENCES TO THE DEBTORS

The Debtor will generally realize gain or loss on the sale of its assets equal to the difference between (i) the amount realized on the sale and the fair market value of the assets sold, and (ii) its adjusted tax basis in the assets sold or transferred. The character of any gain or loss as capital or ordinary, and in the case of capital gain or loss, as short term or long term will depend upon the nature of assets sold or transferred and the Debtor's holding period for the assets.

To the extent that the consideration issued to holders of Claims pursuant to the Plan is attributable to accrued but unpaid interest, the Debtor should be entitled to interest deductions in the amount of such accrued interest, but only to the extent the Debtor has not already deducted such amount. The Debtor should not have COD income (as defined below) from the discharge of any accrued but unpaid interest pursuant to the Plan to the extent that the payment of such interest would have given rise to a deduction pursuant to § 108(e)(2) of the Internal Revenue Code.  Further, the discharge of a recourse debt obligation by a debtor for an amount of Cash and/or fair market value of property that is less than the adjusted issue price of the debt obligation (as determined for U.S. federal income tax purposes) gives rise to cancellation of indebtedness ("**COD**") income, which must be included in the debtor's income, subject to certain statutory or judicial exceptions that can apply to limit the amount of COD income (such as where the payment of the canceled debt would have given rise to a tax deduction). A specific statutory exception applies to certain debtors if the discharge of indebtedness is granted in a case under Title 11 of the United States Code (relating to bankruptcy) and pursuant to a plan approved by a bankruptcy court in such case. A separate exception applies to taxpayers if the discharge occurs when the taxpayer is insolvent.  In the case of debtors that are pass through entities, both of the aforementioned statutory exceptions must be applied at the partner level. Unless an exception applies, the owners of Equity Interests of the Debtor will realize their distributive share of COD income realized by the Debtor as a result of the Plan to the extent an Allowed Claim is cancelled for no consideration, or in exchange for Cash or other assets conveyed, if any, that in the aggregate is less than the adjusted issue price of the Allowed Claim.

For the foregoing reasons, the precise amount of taxable gain or loss, COD income, or both, which the Debtor will realize as a result of effectuation of the Plan cannot be determined until the date of the exchange.

## B.     TAX CONSEQUENCES TO CREDITORS

The tax consequences of the implementation of the Plan to Creditors will depend in part, on the type of consideration received by the Creditor in exchange for its Allowed Claim, whether the Creditor reports income on the accrual or cash basis, whether the Creditor receives consideration in more than one tax year of the Creditor, whether the Creditor is a resident of the United States, and whether all consideration received by the Creditor is deemed to be received by that Creditor in an integrated transaction. The tax consequences of the receipt of Cash or property that is allocable to interest are discussed below in the section entitled "Receipt of Interest."

Receipt of Cash and Other Property.  A Creditor who receives Cash and/or other property in satisfaction of its Claim generally will recognize gain (or loss) on the exchange equal to the difference between the amount of any Cash and the fair market value of any property received (not allocable to interest) and the Creditor's tax basis in its Claim. The character of any gain or loss as capital or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim (e.g., Claims arising in the ordinary course of a trade or business or made for investment purposes); (ii) the tax status of the holder of the Claim; (iii) whether the Claim is a capital asset in the hands of the Holder; (iv) whether the Claim has been held by the holder for more than one year; (v) the extent to which the holder previously claimed a loss or a bad debt deduction with respect to the Claim; and (vi) the extent to which the holder acquired the Claim at a market discount. Creditors should consult their own tax advisors regarding the amount and character of gain or loss, if any, to be recognized by them under the Plan.

Receipt of Interest.     Consideration received by a Creditor that is attributable to accrued interest not previously included in taxable income should be treated as ordinary income, regardless of whether the Creditor's existing Claims are capital.  Conversely, a holder of an Allowed Claim may be able to recognize a deductible loss (or possibly a write-off against a reserve for worthless debts) to the extent that any accrued interest on the Allowed Claim was previously included in the holder's gross income but was not paid in full by the Debtors. The extent to which the consideration received by a holder of an Allowed Claim will be attributable to accrued interest is unclear.

Market Discount.     The Tax Code generally requires holders of debt instruments with "market discount," (generally, the amount by which the "adjusted issue price" of a debt instrument (i.e., the sum of its issue price plus accrued original issue discount) exceeds the holder's adjusted tax basis in such debt instrument), to treat as ordinary income any gain realized on the disposition of such debt instruments to the extent of the market discount accrued during the holder's period of ownership. Holders should consult their own tax advisors as to the potential application of the market discount rules to them in light of their individual circumstances, and the advisability of

making an election to accrue market discount on a current basis.

Backup Withholding. Under the Tax Code, interest, dividends and other "reportable payments" may, under certain circumstances, be subject to "backup withholding." Withholding generally applies if the holder: (a) fails to furnish his social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax, but merely an advance payment, which may be refunded or credited against such holder's U.S. federal income taxes. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

## C.   IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY AS MANDATED BY SECTION 1125 OF THE BANKRUPTCY CODE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## D.   SECURITIES LAW CONSIDERATIONS

Section 1145 of the Bankruptcy Code exempts the offer or sale of securities pursuant to a plan of reorganization or liquidation from the registration requirements of the 1933 Act and from registration under state securities laws if the following conditions are satisfied: (i) the securities are offered and sold by a debtor or a successor of the debtor under a plan of reorganization or liquidation; (ii) the recipients of the securities hold a claim against, an interest in, or a claim for an administrative expense against, the debtor; and (iii) the securities are issued in exchange for the recipients' claims against or interests in the debtor or principally in such exchange and partly for cash or property. In general, offers and sales of securities made in reliance on the exemption afforded under Section 1145(a) of the Bankruptcy Code are deemed to be made in a public offering, so that the recipients thereof, other than underwriters (as defined in Section 1145(b) of the Bankruptcy Code), are free to resell such securities without registration under the 1933 Act. In addition, such securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states. However, as noted above, the Liquidating Trust Interests may not be transferred, sold, pledged or otherwise disposed of, or offered for sale, except for transfers by operation of law.

THE FOREGOING SUMMARY DISCUSSION IS GENERAL IN NATURE AND HAS BEEN INCLUDED IN THIS DISCLOSURE STATEMENT SOLELY FOR INFORMATIONAL PURPOSES PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE. THE DEBTORS MAKE NO REPRESENTATIONS CONCERNING, AND DO NOT HEREBY PROVIDE, ANY

OPINIONS OR ADVICE WITH RESPECT TO THE SECURITIES AND BANKRUPTCY MATTERS DESCRIBED HEREIN. IN LIGHT OF THE OF THE UNCERTAINTY CONCERNING THE AVAILABILITY OF EXEMPTIONS FROM THE RELEVANT PROVISIONS OF FEDERAL AND STATE SECURITIES LAWS, THE DEBTOR ENCOURAGES EACH CREDITOR, EQUITY INTEREST HOLDER, LIQUIDATING TRUST BENEFICIARY, AND PARTY IN INTEREST TO CONSIDER CAREFULLY AND CONSULT WITH ITS OWN LEGAL ADVISORS WITH RESPECT TO ALL SUCH MATTERS.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

Certain Rights Unaffected.  Except as otherwise provided in the Plan, any rights or obligations which the Debtor's Creditors may have amongst them as to their respective claims or the relative priority or subordination thereof are unaffected.

Binding Effect.  As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims, and their respective successors and assigns.

Compliance with Regulations of the Office of the U.S. Trustee. During the pendency of these Proceedings, the Debtor will comply with all regulations promulgated by the Office of the U.S. Trustee, including remaining current on all quarterly fees assessed against the Estate by the U.S. Trustee. Upon confirmation of the Plan, and until a final decree is entered in the Bankruptcy Case, the Reorganized Debtor shall file the required quarterly reports and pay the fees due under the provisions of 11 U.S.C. section 1930(a)(6) on behalf of iDocket.

Notices.  All notices, requests or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing, provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following parties, addressed to:

> **Debtors' Counsel:**
> Brad W. Odell
> MULLIN HOARD & BROWN, L.L.P.
> P.O. Box 2585
> Lubbock, Texas 79408-2585
> Telephone: (806)765-7491
> Facsimile: (806) 765-0553

All notices and request to holders of Claims and Interests shall be sent to them at the address listed on the last-filed Proof of Claim and if no Proof of Claim is filed, at the address listed in the Debtor's Schedules.

## CONCLUSION

The Debtor respectfully submits that the Plan satisfies all of the statutory requirements of

Chapter 11 of the Bankruptcy Code, including the "best interest of creditors" and "feasibility" requirements and that it should be confirmed even in the event a class of claims does not vote for acceptance of the Plan.  The Debtor believes that the Plan "is fair and equitable" and "does not discriminate unfairly."  The Debtor believes that the Plan has been proposed in good faith.

The Debtor respectfully requests that this Disclosure Statement be approved for circulation to the creditors of the Debtor and that it be permitted to solicit votes for acceptance of the Plan.

The Debtor further urges holders of Claims in any impaired Class to vote to ACCEPT the Plan and to evidence such acceptance by returning their ballots so that they will be received on or before 5:00 p.m. (CST), on **[Date to be Entered on Approval]**.

DATED: February 6, 2024                 Respectfully Submitted,

By:    /s/ Brad W. Odell
       Brad W. Odell:  SBN 24065839

MULLIN HOARD & BROWN, LLP
P.O. Box 2585
Lubbock, TX 79408
Tel: 806-765-7491
Fax: 806-765-0553
Email:  bodell@mhba.com
***Attorneys for Debtor, iDocket.com, LLC***